**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DARRIEN LADANTAE TAYLOR       :
     Petitioner

                                    :

     v.                           CIVIL ACTION NO. PJM-07-2176

                                      :

ROBERT KOPPEL, Warden
     and.                                 :
DOUGLAS F. GANSLER,
Attorney General of the                   :
State of Maryland
     Respondents            ooOOOoo

## MEMORANDUM OPINION

Pending is Darrien Ladantae Taylor's counseled 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus challenging his convictions from 2003 in the Circuit Court for Prince George's County for attempted first-degree assault, use of a handgun in the commission of a crime of violence, and reckless endangerment. Counsel for Respondents, Robert Koppel, Warden[1] and Douglas F. Gansler, Attorney General of the State of Maryland, has filed a response to which Petitioner's counsel has filed a reply. The case is fully briefed and ready for ruling. Upon careful review of the pleadings, transcripts, and applicable law, the Court determines an evidentiary hearing is unnecessary and relief will be DENIED.

## PROCEDURAL HISTORY

On July 25, 2003, a jury sitting in Prince George's County Circuit Court found Taylor guilty of first-degree assault of Philip Fleming, use of a handgun in the commission of a crime of

---

[1] Taylor is presently confined at the Roxbury Correctional Institution where the Warden is Gregg Hershberger. Gregg Hershberger is Taylor's custodian and will be substituted for Robert Koppel as a respondent. *See* Rule 2(a), 28 U.S.C. folio § 2254; Fed. R. Civ. P. 25(d)(1).

violence and reckless endangerment of Phillip Fleming.[2] Taylor's co-defendant, Gerald Edward Anderson, who was charged with identical offenses, was acquitted of all charges. Taylor was sentenced to twenty years imprisonment with all but ten years suspended for first-degree assault and a consecutive ten-year term for use of a handgun during the commission of a crime of violence. The sentence for reckless endangerment was suspended.

The Court of Special Appeals of Maryland affirmed judgment by unreported opinion filed on March 17, 2005, in *Taylor v. State*, No. 2363, Sept. Term 2003. Maryland's intermediate appellate court ruled that the evidence at trial was sufficient to sustain conviction and the trial court did not err in imposing separate sentences for first-degree assault and use of a handgun in the commission of a crime of violence. Taylor did not petition for writ of certiorari in the Court of Appeals of Maryland.

On December 28, 2005, Taylor petitioned for post-conviction relief in the Circuit Court for Prince George's County. A hearing on the Petition was held on September 14, 2006. On November 14, 2006, the post-conviction Petition was denied on all grounds, except for granting Taylor the right to file a belated Motion for Reconsideration of Sentence.[3]

On December 8, 2006, Taylor filed an Application for Leave to Appeal from the Denial of Post Conviction Relief. On May 29, 2007, the Court of Special Appeals of Maryland summarily denied the Application for Leave to Appeal. Taylor, by his counsel, subsequently filed this timely petition for federal habeas corpus relief.

---

[2] Taylor was charged in a fifteen-count indictment with attempted murder of Philip Fleming, attempted murder of Justin Hairston, and reckless endangerment of Karen Freeman and James Fleming. The jury acquitted Taylor of three counts of reckless endangerment, two counts of attempted murder and conspiracy to commit murder, and one count each of first-degree assault, second-degree assault, and use of a handgun in the commission of a felony or a crime of violence.

[3] According to the Maryland Judiciary website, Taylor filed a Motion for Reconsideration of Sentence on December 7, 2006. The Motion was denied on April 16, 2007. *See* CTO21044A.

# FACTS

The Court of Special Appeals of Maryland summarized the relevant facts adduced at trial as follows:

This appeal arises out of a simmering dispute that involved on one side of it, Philip Fleming, the victim, and his best friend, Justin Hairston, and on the other, a group of men known as the 28th Street Gang. Appellant, Gerald Anderson, and a man named "Kelo" were part of that gang. Although the victim [Fleming] and Hairston knew and associated at times with members of the gang, they were not members.

The charges against [Taylor] were based on three separate shootings that occurred on May 30, 2002. In its attempt to show motive for the shootings, the State presented evidence of two incidents that occurred several months before the shootings at issue.

The first of these incidents took place in August, 2001. On that occasion, the victim was playing dice with Kelo and several other members of the gang. At one point during the game, Kelo pointed a gun at the victim and robbed him. The victim heard later that Kelo had told others in the gang to shoot the victim or his friends if they were seen in the neighborhood.

The second incident occurred in September, 2001. On that occasion, appellant called Hairston and asked to meet him at the back of a certain mall. Hairston drove to the area and saw [Taylor]. Hairston then heard several gunshots and saw Kelo firing a gun at him. Hairston drove away but not before sustaining a bullet wound to the head.

Then, on May 30, 2002, the shooting that gave rise to the present case occurred. All took place during the early morning on that date. The first occurred while the victim was driving his car. A car drove past him, and its occupants fired shots at him. The victim drove to Hairston's home and picked him up, then drove back to the victim's house.

As the two men approached the victim's home, a car drove slowly past them, and the car's two occupants started shooting at them.

The third shooting occurred a short while later, at the house the victim shared with his father and his father's fiancé. At that time, about twenty shots were fired into the home, through the side bedroom window, front bedroom window, den, and living room. The victim's father and his father's fiancé were at home at the time, but neither was seriously

injured.

Later on the day of the shootings, Hairston and the victim gave statements to the police. Hairston wrote in his statement that, although he did not know the passenger of the car from which the shots were fired, [Taylor] was the driver of the car. Hairston also wrote that he did not see who was shooting at him. At trial, Hairston identified appellant as the driver and Gerald Anderson as the front seat passenger. Hairston testified that [Taylor] held a .25 caliber chrome-colored gun out the window. Hairston did not see the gun that Anderson was holding.

In his statement to the police on the day of the shootings, the victim wrote that [Taylor] and Anderson had shot at him. At trial, however, he testified that he suspected who was in the car but did not see them. He explained that he was too busy "ducking."

[Taylor] presented no testimonial evidence.

Exhibit 10, pp. 1-3.

## PROCEDURAL DEFAULT

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U. S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

The procedural default doctrine bars consideration of a claim in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. *See Murray*, 477 U.S. at 495; *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977). Even where a petitioner fails to show cause and prejudice for a procedural default a court must still consider whether it should reach the merits of the petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U. S.298, 314 (1995); *Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009); *see also Wolfe v. Johnson*, 565 F.3d 140, 160 (4th Cir. 2009) (a habeas petitioner may overcome a procedural default

by showing cause and prejudice or by establishing that his confinement constitutes a miscarriage of justice). The miscarriage of justice standard is directly linked to innocence. *Schlup*, 513 U.S. at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 315. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U. S. at 496.

Counsel for Respondents asserts that Taylor's claim of appellate court error in regard to the sufficiency of the evidence presented at trial is procedurally defaulted because he did not petition for a writ of certiorari in the Court of Appeals of Maryland. In his reply, Taylor makes no argument to excuse or overcome procedural default. No basis is presented to suggest a fundamental miscarriage of justice. Accordingly, the claim will be dismissed as procedurally defaulted.[4]

## STANDARD OF REVIEW

The federal habeas statute, 28 U.S.C. § 2254, provides a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

---

[4]     Even if this claim were not procedurally defaulted, Taylor does not sustain his burden to show the state court decision was contrary to, or involved unreasonable application of clearly established federal law, or was based on an unreasonable determination of facts in light of the evidence presented to the state court. The uncorroborated testimony of one witness may be sufficient to sustain a verdict of guilty. *See United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1985), citing *United States v. Shipp*, 409 F.2d 33 (4th Cir. 1969).

Ineffective assistance claims are reviewed under a two-part test established in *Strickland v Washington,* 466 U.S. 668 (1984); *see also Bell v. Cone*, 535 U.S. 695, 698-99 (2002) (explaining the interplay between *Strickland* and 28 U.S.C. § 2254(d)). To establish ineffective assistance of counsel, it must be shown that 1) counsel's deficient performance 2) prejudiced the defense. *See id.* at 687. Representation is deficient if it falls below "an objective standard of reasonableness." *Id.* at 688. It must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id* at 687. The standard of review for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."*Id.* at 669. To prevail, the petitioner must overcome the presumption that the challenged action might be considered "sound trial strategy." *Id.* at 689.

A showing of prejudice requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable and 2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See id.* at 690-94. "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686. A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697. In the § 2254 context, a petitioner must show that the state court applied *Strickland* to the facts in an objectively unreasonable manner. *See Bell v. Cone,* 535 U.S. at 698-99; *Williams,* 529 U.S. at 405.

**DISCUSSION**

Taylor claims his trial counsel provided constitutionally ineffective assistance by failing

to : 1) litigate a pre-trial motion to suppress evidence; 2) meaningfully cross-examine the two

main prosecution witnesses; 3) object to use of photographs not provided during discovery; and

4) object to the prosecutor's closing argument.

**1.  Failure to Litigate Pre-Trial Motion to Suppress Evidence**

Taylor's trial counsel filed and later withdrew a pre-trial motion to suppress

evidence.  There was "but one piece of physical evidence, a shell casing, found in the car" he

was allegedly driving when Philip Fleming was shot.  Complaint, p. 8.  Taylor claims this

evidence was extremely prejudicial because it linked the shooting of Philip Fleming to [Taylor's]

car.  Taylor asserts that "[g]iven other not guilty verdicts in the case, there is a substantial

possibility that the outcome of the case would have been different had that evidence been

suppressed." *Id*. pp.  8-9.

Taylor's claim was rejected by the post-conviction court which ruled:

In this case all Motions to Suppress were withdrawn prior to
trial. Petitioner argues that a shell casing found in the hood of the car that
the Petitioner was allegedly driving was the only evidence that tied that
car to the shooting of Phillip Fleming, and that there is a substantial
possibility that the outcome of the case would have been different had that
evidence been suppressed. The trial attorney gave two reasons for
withdrawing the Motion to Suppress. First, in order to suppress this
evidence, it would have bee necessary for Petitioner to testify at a pre-trial
hearing on the issue of whether he had standing to seek suppression of the
shell casing on constitutional grounds. Trial Counsel mistakenly believed
that the Petitioner's testimony on the standing issue could be used in the
State's case-in-chief. Second, Trial Counsel testified that his theory of
defense was that his client was not there and therefore suppression of
items found in the car that was there was of no consequence to him.

Trial Counsel, despite the fact that he also had a legally incorrect
reason for not pursuing the Motion to Suppress, also decided that for
tactical reasons there was no need to pursue a Motion to Suppress because

the evidence would not prejudice his client. That was a sound tactical decision that this Court will not second guess simply because it was partially motivated by an incorrect impression of the law. The former does not invalidate the latter tactical decision.

Exhibit 15, pp. 2-3.

Taylor fails to specify in his § 2254 petition, motion to suppress, or petition for post-conviction relief any legal or factual basis for suppressing the shell casing.[5] Even where counsel misunderstands the consequences of failing to move to suppress there must be legally meritorious grounds for exclusion. *See Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986) (indicating where failure to litigate a Fourth Amendment claim competently is alleged, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice).

Trial counsel testified before the post-conviction court that the theory of the defense was there was no criminal agency. His reasoning was that if Taylor was not present at the shooting, then a shell casing found inside the hood of the car made no difference. The post-conviction court recognized trial counsel's mistake about standing, but found credible his testimony concerning defense strategy. Absent clear and convincing evidence to the contrary, a claim that counsel's decision was premised on trial strategy cannot be disturbed. *See Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989). A federal habeas court must grant a "heavy measure of deference to counsel's judgments," and, in doing so, may only evaluate such performance from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Strickland,* 466 U.S. at 690-91. A federal court should avoid "Monday morning quarterbacking" on habeas review. *See Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir.1991); *see also Strickland*,

---

[5] The Motion to Suppress contained only generalized allegations of error. Exhibit 2, 1-4.

466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight...."). The post-conviction court credited trial counsel's testimony and this court finds no reason to supplant the state court's determination.

Further, this claim fails to satisfy the prejudice prong set forth in *Strickland*. There is little probability that the verdict would have been different had the shell casing been excluded; the shell casing at best was corroborative.of the witness testimony provided by Fleming and Hairston. Excluding the shell casing would not have altered the outcome of trial. For these reasons, the claim provides no cause to disturb the state court decision.

### 2. Failure to Cross-Examine

Taylor next asserts that trial counsel failed to "meaningfully" cross-examine the state's two main witnesses; Philip Fleming and Justin Hairston; to substantiate his characterization of Fleming and Hairston during opening statement as "drug dealers, gang bangers, gunslingers, people who deal drugs every day who get in gun fights all the time." Exhibit 5, p. 25.

The post-conviction court rejected this claim, observing that defense counsel presented evidence at trial that both witnesses had been convicted of possession with intent to distribute controlled substances and were in possession of handguns. The post-conviction court determined: "Trial counsel proved that they had unsavory histories. Using colloquial terms to characterize that during opening statements does not constitute error." Exhibit 15, p. 3.

At trial, counsel for Taylor and counsel for his co-defendant Gerald Anderson both cross-examined Fleming and Hairston. Anderson's defense counsel elicited testimony from Fleming on cross-examination that he sold marijuana, cocaine,and PCP. Exhibit 5, p. 180. Anderson's counsel also elicited testimony from Hairson about his conviction for cocaine distribution. Taylor's counsel cross-examined Hairston immediately afterwards. The jury had just heard

Hairston's testimony about his drug conviction, and it was not be unreasonable for counsel to want to avoid redundant questioning. Notably, Taylor fails to specify what additional questioning would have rendered cross-examination more "meaningful." During the trial, the jury heard testimony that Fleming sold drugs and carried guns. *Id*, p. 102. Further, they heard testimony that Hairston was convicted of drug dealing and caught with $30,000 worth of guns and drugs. *Id.*, p. 101-102. They heard Fleming testify that he and Hairston sold enough drugs to pay for a hotel. *Id.*, p. 164, 180.

The record supports the state post-conviction court's decision. The state court's disposition of this claim is entitled to deference, and constitutes neither an unreasonable application of federal law nor a decision based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding. There is no basis to grant habeas corpus relief.

### 3. Failure to Object to Photographs

Taylor faults trial counsel for failing to object to admission of photographs which were allegedly not provided during discovery. The post-conviction court rejected the claim as follows:

> During trial, the prosecution offered photographs of a vehicle involved in a previous uncharged offense that had not been provided to the Petitioner during discovery. Petitioner argues that the photographs were irrelevant and in violation of Maryland Rule 4-263(b)(5).
>
> Trial Counsel could have objected to this evidence during trial. However, the car in the photograph was only involved with Justin Hairston, and Petitioner was found not guilty of any charges involving Justin Hairston. There is not a substantial probability that if these photographs were not admitted at trial, that it would have changed the jury's verdict in relation to the charges involving Phillip Fleming.

Exhibit 15, at 3-4.[6]

When asked at the post-conviction hearing why he had not raised objection to the photographs, trial counsel testified: "[t]here are a number of things that you don't object to unless you believe it's going to hurt your case or help your case at that particular time…." Exhibit 14, p. 40.   Trial counsel testified that he did not believe the photographs prejudiced Taylor's defense.  Exhibit 13, p. 64.

The photographs related to a charge on which Taylor was ultimately acquitted.  The post-conviction court's determination that Taylor suffered no prejudice is supported by the record and entitled to deference.   There is no cause to award relief.

### 4.  Failure to Object to Prosecutor's Comments at Closing Argument

Taylor claims that trial counsel was deficient for failing to object to comments made by the prosecutor at closing argument that attempted to shift the burden of proof to the defense, maligned the court's instructions to the jury, expressed the prosecutor's personal opinion, advanced a "golden rule" argument,[7] and erroneously re-defined reasonable doubt. Petition, Memorandum, p. 13. Taylor argues the comments would have constituted reversible error had trial counsel raised objection.  *Id.*

"[T]he presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). The state carries the burden of proving each and every element of a criminal offense beyond a reasonable doubt, and any conduct that shifts that burden to a defendant constitutes a violation of due process. *See Carella v. California*, 491 U.S. 263, 265 (1989);

---

[6]  Notwithstanding Taylor's assertions, it does not appear that a determination was made whether the photographs were provided at discovery.  *See*  Petition, P. 12; Paper No. 12, Respondent's Memorandum,  p. 31, n. 4

[7]  A "Golden Rule" argument urges jurors to place themselves in the position of a party.  *See e.g. Lawson v. State*, 389 Md. 570, 593 n. 11, 886 A.2d 876 (2005).

*Sandstrom v. Montana*, 442 U.S. 510, 521 (1979).

In order to demonstrate constitutionally ineffective assistance for failure to object to the prosecutor's closing argument, Taylor must show the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v DeChristoforo*, 416 U.S. 637, 643 (1974); *see also McHone v Polk*, 392 F. 3d 691, 706-08 (4th Cir. 2004) (failure to object to prosecutor's misstatement on burden of proof during closing argument not prejudicial to establish ineffective assistance where trial court had properly instructed the jury). "'[I]t is not enough that the remarks were undesirable or even universally condemned.'" *Darden,* 477 U.S. at 181. Furthermore, "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly*, 416 U.S. at 647.

In this case, the trial court twice explained to jurors that their decision must be predicated on evidence and not the statements of counsel. At the start of trial, the judge explained to the jury that:

> Opening statements are not evidence, they are only statements of what the lawyers expect to prove.
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> Opening statements and closing arguments of lawyers are not evidence in this case. They are intended only to help you to understand the evidence and to apply the law. Therefore, if your memory of the evidence differs from anything the lawyers or I might say, you must rely upon your own memory of the evidence.
>
> I just have like a general rule that I believe can apply to you in terms of determining what is evidence and what is not evidence. They are only like a few exceptions to this rule. The rule generally is if it comes from the mouth

of a witness it is evidence. If it comes from the mouth of a lawyer it is not
evidence.

Exhibit 5, p. 5, 8.

In instructing the jury before it went into deliberations, the trial court reminded:

Opening statements and closing arguments of lawyers are not evidence in this case.
They are intended only to help you understand the evidence and to apply the law.
Therefore, if your memory of the evidence differs from anything the lawyers or I may
say, you must rely upon your own memory of the evidence.

Exhibit 6, p. 44.

Additionally, the trial judge told the jury that its instructions were binding: "The
instructions that I give you about the law are binding on you. In other words, you must apply
the law as I explain it to you in arriving at your verdict." Exhibit 6, p. 41. Written copies of the
instructions were given to jurors. Exhibit 6, p. 40. Against this factual and legal background, the
Court now exams trial counsel's representation in the context of the prosecutor's closing
remarks.

### a.    Defense Counsel's Opening Statement was "never  proved"

Taylor asserts that trial counsel was ineffective for failing to object when prosecutor
attempted to shift the burden of proof by arguing that trial counsel "never proved" witnesses
Fleming and Hairston were "gang bangers" or carried guns. Exhibit 6, pp. 61-63. This claim
was rejected by the state post-conviction court which stated:

Trial Counsel did not object when the prosecutor said that matters
brought up in defense counsel's opening statement were "never proved."
Petitioner argues that this was an impermissible attempt to shift the burden of
proof to the defendant.

While Trial Counsel could have objected to this statement, the jury was
properly instructed by the judge on the burden of proof. There is not a
substantial probability that this remark by the prosecutor in his closing
argument led the jury to believe that the defense had to prove anything, or that
it would have changed their decision in this case.

13

Exhibit 15, p. 5.

Trial counsel testified at the post-conviction hearing that he did not raise an objection because "[i]t wasn't necessary to be made because I did deliver it, number one, and number two it was permissible what he was saying. He said nothing that was impermissible." Exhibit 13, p. 53. Refraining from objecting [during closing argument] "to avoid irritating the jury is a standard trial tactic." *Bennett v. Angelone*, 92 F.3d 1336, 1349 (4th Cir. 1996). Such tactical decisions do not give rise to claims for ineffective counsel. *See Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989).

Taylor relies on *Sandstrom v. Montana*, 442 U.S. 510, 513 (1979) to support his claim. In *Sandstrom*, the Supreme Court held due process was violated by a jury instruction that could be interpreted by a reasonable juror to relieve the state of the burden of proof. *Id*. at 512. Taylor's claim, in contrast, involves not jury instructions, but the prosecutor's closing statement. Taylor's jury was repeatedly instructed by the trial judge to base its decision on evidence, not the remarks of counsel. The jury was instructed to apply the law as explained by the trial judge. The record shows the prosecutor's comments were in response to remarks made by defense counsel in his opening statement and were not an attempt to shift the burden of proof as to any element of the crime. The state post-conviction court's determination is supported by the record and Taylor does not show *Strickland* was applied to the facts in an objectively unreasonable manner. Taylor is not entitled to habeas corpus relief on this claim.

**b. Prosecutor's Comments on Reasonable Doubt**

Taylor complains trial counsel was deficient for failing to object to the prosecutor's reference to the court's reasonable doubt instructions. The trial judge gave the following reasonable doubt instruction to the jury:

The defendants are presumed to be innocent of the charges. This presumption remains with the defendants throughout every stage of the trial and is not overcome unless you are convinced beyond a reasonable doubt that the defendant or defendants are guilty.

The State has the burden of proving the guilt of a defendant beyond a reasonable doubt. This burden remains on the State throughout the trial. The defendant is not required to prove his innocence. However, the State is not required to prove guilt beyond all possible doubt or to a mathematical certainty. Nor is the State required to negate every conceivable circumstance of innocence.

A reasonable doubt is a doubt founded on reason. Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs. However, if you are not satisfied of the defendants' guilt to this extent, then reasonable doubt exists and the defendant must be found not guilty.

Exhibit 6, p. 42.   Copies of the instructions were distributed to jurors.  Exhibit 6, p. 40.

Addressing the jury in his closing statement, the prosecutor referred to reasonable

doubt standard:

Well, I want to go over the State's burden with you because the instruction that you are being given and that you will read is really – it doesn't actually tell you what a reasonable doubt is, but rather what it is not. Beyond a reasonable doubt is repeated so often that people don't really think about what it means quite often. There are two problem words with it, beyond and reasonable. To understand what it means to you have to understand what they mean in this phrase. The problem with the word "beyond" is it is not used in its normal sense here. Normally "beyond" means further than as in like Chicago lies beyond Ohio.

Here is what it means in this phrase, it means to the exclusion of. As in it is beyond question, or beyond argument. On a sunny day the sky is blue and on a cloudy day the sky is gray. It means to the exclusion of.

The instruction on what a reasonable doubt is is also unhelpful. These are written by committees of people. The instructions tell you that a reasonable doubt is a doubt based upon reason, but how does that help you understand what it is really, because if your reason is faulty, if your reason is based on a whim, or conjecture or speculation, and not on evidence, then by definition your reason is unreasonable.

Then it goes on to tell you how you should feel if you don't have one. You know like confident enough to make a decision without reservation, etcetera. Then you would know you don't have one. When you read the instruction in its entirety it is pretty clear what it actually means positively, and that's this: A reasonable doubt has to be a sound, sensible, logical doubt based upon the evidence in this case, the testimony, the prior statements, the ballistics, the photographs, the documents, and nothing else. Sound, sensible, and logical.

So the State's burden is to prove the defendants guilt to the exclusion of a sound, sensible and logical doubt based on the evidence in this case. That the State has done.

Exhibit 6, pp. 69-70. Counsel for Taylor's co-defendant emphasized to the jurors that they had to be "convinced beyond a reasonable doubt, to a moral certainty or each and every charge and the elements of those charges before you can convict anybody." *Id*. at 87.

Taylor specifically faults trial counsel for not objecting when the prosecutor stated, "[t]he instruction on what a reasonable doubt is also unhelpful. These are written by committees of people." Exhibit 6, pp. 69-70. Taylor argues that the prosecutor's remarks invited the jury to disregard the trial court's reasonable doubt instruction. Related to this argument is Taylor's claim that the prosecutor's "rendition" varied in "material respect" from the court's instruction based on the Maryland pattern jury instructions. [8] Taylor asserts the standard is not whether *a* juror could make a decision without reservation but whether a juror would be willing to act upon the State's proof without reservation in *an important matter in a juror's own business or personal affairs* " Petition, Memorandum p. 16 (Emphasis in Memorandum)**.** Taylor posits these

---

[8] The Maryland Pattern Jury Instructions 2:02, at 18 (MICPEL) read in pertinent part:

Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs. However, if you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty.

Petition, Memorandum, p. 15.

comments undermined the "weightiness of the jury's decision and the State's burden*." Id.*

The post-conviction court determined that defense counsel's failure to object to these comments caused no prejudice to Taylor. The comments did not pose danger of infecting the trial with unfairness in light of the written and oral jury instructions given by the trial judge.

The post-conviction court distinguished the facts in the case at bar from those in *Rheubottom v. State*, 99 Md. App. 335 (1994), a case relied on by Taylor to support his ineffective assistance claims. The post-conviction court held:

> The case at bar is clearly distinguishable. First, the prosecutor in this case said nothing as shocking as "unless you can write down an articulable reason on a piece of paper you do not have reasonable doubt." Secondly, the trial judge not only gave the proper jury instruction, but also instructed the jury, that his instructions, and not counsel's arguments, were binding on them. Further, the trial judge sent the instructions to the jury in writing, so that if they had any questions as to the definition of reasonable doubt, it was available to them. Third, even if we assume without deciding that the prosecutor's argument was improper, the Court of Special Appeals has stated "that just because a prosecutor makes an improper jury argument this does not necessarily constitute reversible error." [*Rheubottom*, 99 Md. App.] at 341.

> It is disconcerting that the prosecutor told the jury that the court's reasonable doubt instruction was "unhelpful." However, the jury was properly instructed by the Court, and was told that the Court's instructions were binding. There is not a substantial probability that the jury would have decided differently had Trial Counsel objected and had that objection been sustained.

Exhibit 15, p. 8.

During the post-conviction hearing, trial counsel testified that he did not object to the prosecutor's comments because he did not think them improper or misleading. Exhibit 13, p. 47, 49-50. Trial counsel continued that he did not object because that trial judge had given clear and unequivocal instructions to the jury, had specified that counsels' opening and closing statements

were not in evidence, and had informed the jury about the binding nature of his instructions.[9]

Exhibit 13, p. 47. The post-conviction court noted the prosecutor was not required to repeat the

court's instruction verbatim. Exhibit 13, p. 95-97.

Taylor's reliance on on *Taylor v. Kentucky,* 436 U.S. 478 (1978) and *Cage v. Louisiana*

in support of his ineffective assistance claims is unpersuasive. In *Taylor v. Kentucky*, a trial

court denied a request to instruct the jury on presumption of innocence and the indictment's lack

of evidentiary value where the prosecutor had referred at closing to other defendants'

convictions and sentences. The Supreme Court ruled the prosecutor's comments while not

necessarily reversible, combined with "skeletal" and "spartan" instructions, possible harmful

references to the indictment, and repeated suggestions that petitioner's status as a defendant

tended to establish his guilt, created a genuine danger that the jury would convict petitioner on

the basis of extraneous considerations instead of on the evidence introduced at trial; and violated

his right to a fair trial. *See id*. at 486-88.

The facts presented in the instant petition are readily distinguished from the facts in

*Taylor.* In the instant matter, there were no closing references by the prosecutor to convicted

co-defendants or their sentences, the trial judge's instructions were ample, clear and

undisputed, and no issue was raised regarding presumption of innocence or the indictment's

lack of evidentiary value. Exhibit 6, p. 42. Taylor's reliance on *Cage v. Louisiana*, 498 U.S. 39

(1990) for the proposition that the prosecutor's comments diminished the burden of proof is also

misplaced. The facts in *Cage* involved improper jury instructions, not concerns about the

prosecutor's closing comments.

---

[9] Trial counsel also testified that he had an opportunity to explain or respond in his closing argument. Trial
counsel did not, however, later address the prosecutor's comments.

Having examined the post-conviction court's ruling and independently examined the record, this Court is satisfied that in applying the *Strickland* standard to the allegations, Taylor has not demonstrated the prejudice necessary to establish ineffective assistance of counsel under 28 U.S.C. § 2254(d).

### c. Prosecutor Comments about Attempted Murder Instruction

Taylor, who was acquitted of attempted murder, asserts that trial counsel should have objected when the prosecutor told the jury that the attempted murder instruction was too complicated. The claim was rejected by the post-conviction court as follows:

> During closing argument, the prosecutor said of the murder instruction: "Lawyers again write these, and lawyers have a habit of using language that it more complicated than it needs to be." Commenting that the language of the instruction is more complicated than it needs to be does not encourage the jury to disregard it. It was not error for Trial Counsel not to object to that comment.

Exhibit 15, at 8. The record supports the decision of the post-conviction court. Since the jury acquitted Taylor of attempted murder, it is unlikely that the remarks had any impact on the jury's consideration of the other charges. Further, the jury was reminded by the court of the binding nature of the instructions. This argument does not warrant award of federal habeas relief.

### d. Expressing Personal Opinions

Taylor claims ineffective assistance for failing to object to the prosecutor's expressions of personal opinion, prefaced with the words "I think." In rejecting Taylor's argument, the post-conviction court determined:

> Petitioner alleges that the prosecutor offered several unobjected to personal opinions to the jury. They included: (1) "So I think you can conclude from that from what the motive of these 28th [Avenue] crew members was," (2) "I think the circumstantial evidence is pretty clear who shot up James Fleming's house . . ." and (3) "I think you can see that people who spray bullets around communities are a danger to this community."

As to the first comment the preceding statements are as follows: "When you think about this evidence in this case you can see what the motive to these shootings was. I think, the State doesn't have to prove this, but I think these defendants were enforcing the dictates of the 28th Avenue crew." Then, counsel for the co-defendant objected "to what counsel thinks," and the objection was sustained. So, the jury knew that counsel's thoughts were impermissible.

The first two statements are referring to the evidence in the case. If you remove the words "I think" from those statements, they are perfectly acceptable, as admitted by Petitioner's Post Conviction Counsel during argument. It is simply a matter of semantics, which is what Trial Counsel said during questioning during the Post-Conviction hearing. He did not object because the prosecutor was referring to what the jury should conclude from the evidence.

While it might not be ideal for the prosecutor to ever use the phrase "I think," it was not ineffective assistance of counsel not to object to its use. First, the prosecutor was referring to the evidence in the case. Second, the jury knew that they were not to consider the opinions of the prosecutor, as the judge had previously sustained an objection to that effect. There is not a substantial probability that the jury would have decided differently if the prosecutor had not used the phrase "I think."

As to the third comment, the analysis above applies to the "I think" portion of that comment. However, the Petitioner also takes issue with the fact that the third statement improperly appeals to the jury to convict to preserve the quality of their community. This Court finds that telling the jurors: "I think you can see that people who spray bullets around communities are a danger to this community," does encourage them to convict to preserve the quality of their community. That was an improper statement, and it was error to not object to it. *Hill v. State*, 355 Md. 206, 225 (1999). However, not objecting to one improper statement by the prosecutor in his closing argument, does not render an attorney's representation ineffective assistance of counsel. There is not a substantial probability that the jury would have decided this case differently if Trial Counsel had objected to this statement. This is evidenced by the fact, that the jury did not find the Petitioner guilty of any of the charges related to the shooting up of Fleming's home.

Exhibit 15, at 9-10.

The post-conviction court's decision constitutes a reasonable application of *Strickland*

The prosecutor prefaced his statements with the phrase "I think" not to replace evidence with his

personal judgment, but rather in an "innocuous, conversational sense." *United States v. Adam*,

70 F.3d 776, 780 (4th Cir. 1995); *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003). While prosecutors must take care to avoid expressing personal opinions, Taylor fails to show how the remarks prejudiced the outcome of trial. Taylor acknowledges that co-defendant Anderson's objected "to what counsel thinks" and the objection was sustained. Petition, p. 14; s*ee also* Exhibit 6, p. 74.

Taylor argues the prosecutor's "danger to the community" comment was a "Golden Rule" [10] argument warranting objection because it asked jurors to convict to preserve the quality of the community rather than to convict on the basis of evidence at trial. The post-conviction court ruled the statement improper, but found no substantial probability that the jury would have decided this case differently had trial counsel had objected. "The law is clear that although it is improper to ask jurors to place themselves in the position of a party, such a 'golden rule' argument does not constitute reversible error if no prejudice arise[s] from counsel's comment." *Insurance Co. of North America v. U.S. Gypsum Co*., 870 F.2d 148, 154 (4th Cir. 1989) 870 F.2d 148, 154 (4th Cir. 1989) (citing *Arnold v. Eastern Airlines, Inc*., 681 F.2d 186, 199-200 (4th Cir. 1982). At issue here was a single, isolated comment, followed by the prosecutor's urging to "Use that evidence [from Fleming and Hairston]. Remember you can believe all, part or none of what a witness says. Use the evidence that you agree on to see what happened, what they did, and to hold them accountable for what they did."

The state court's determination is entitled to deference and Taylor failed to sustain his burden to show prejudice under *Strickland.* The state court's decision survives scrutiny under the standard for federal habeas review.

## CONCLUSION

---

[10] *See* Exhibit 15, p. 55; *see also infra*, note 7.

For these reasons, the Court will deny the Petition for Writ of Habeas Corpus by separate order.   A certificate of appealability will not issue.[11]


                                                          /s/
May 17, 2010                                    PETER J. MESSITTE
                                          UNITED STATES DISTRICT JUDGE

---

[11]   There is no absolute entitlement to appeal a district court's final order in a habeas corpus proceeding. *See* 28 U.S.C. § 2253(c) (1). "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).   When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.' " *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack*, 529 U.S. at 484).